IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION


DONALD LAFORCE,

    Plaintiff,

vs.                                          CASE NO. 1:04CV400-SPM/AK

JO ANNE B. BARNHART,
**Commissioner of Social Security**

    Defendant.

_____/

**REPORT AND RECOMMENDATION**

    This action is brought pursuant to 42 U.S.C. § 405(g) of the Social Security Act (Act) for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's applications for disability insurance benefits (DIB) filed under Title II of the Act.

    Upon review of the record, the Court concludes that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

A.   **PROCEDURAL HISTORY**

Plaintiff filed an application for DIB on January 21, 2000, alleging a disability onset date of December 31, 1995, because of degenerative disc disease.  Plaintiff petitioned for a hearing before an administrative law judge (ALJ), who conducted a hearing on December 13, 2001, and entered an unfavorable decision on December 19, 2001.  The Appeals Council remanded the action to the ALJ, who conducted a supplemental hearing on August 28, 2003, and an unfavorable decision was again entered on October 30, 2003.  The Appeals Council denied Plaintiff's request for review of this later decision on August 25, 2004, thus making the decision of the ALJ dated October 30, 2003, the final decision of the Commissioner under present judicial review.  This action followed.

B.   **FINDINGS OF THE ALJ**

Because Plaintiff last met the disability insured requirements on December 31, 2000, he must prove that he became disabled on or before that date.  (R. 18).  On this date Plaintiff was 53 years old with three years college education and past relevant work experience as a sales manager.  (R. 19).

The ALJ found that Plaintiff had severe degenerative disc disease and hypertension, which were severe impairments within the meaning of the Act.  (R. 19).  The ALJ also found that Plaintiff had been receiving "payment in kind" for being an apartment manager, which could be considered substantial gainful activity and was not reported to SSA, but the ALJ would not find this activity to be SGA.  However, the ALJ

**No. 1:02CV125-SPM/AK**

would consider this evidence as consistent with his finding that Plaintiff could return to a management position such as his past relevant work.

Upon remand by the Appeals Council, the ALJ was directed, among other things, to make findings regarding Plaintiff's mental condition. The ALJ found no evidence to support a finding of a severe mental condition prior to December 31, 2000, causing more than mild limitations in daily functioning.

The ALJ also examined whether Plaintiff's degenerative disc disease or hypertension met the listings for these impairments prior to December 31, 2000, and found that they did not. (R. 22). Rather the ALJ found that Plaintiff had, on December 31, 2000, a residual functional capacity to perform sedentary work with a sit/stand option, with no repetitive twisting, climbing, or work on ladders, ropes or scaffolds. (R. 22).

A vocational expert testified that Plaintiff's past relevant work as a sales manager, although he described it as medium work, was typically sedentary work as defined in the Dictionary of Occupational Titles, and Plaintiff could perform his past relevant work or a significant number of jobs existing in the national economy. (R. 22-23).

C.  **ISSUES PRESENTED**

Plaintiff argues that the ALJ rejected his credibility without an evidentiary basis and substantial evidence supports his allegations of pain. Plaintiff contends that objective tests show degenerative changes in his spine supporting a finding of pain, as

**No. 1:02CV125-SPM/AK**

well as treatment notes reflecting his consistent complaints of pain, and the ALJ failed to articulate explicit and adequate reasons for rejecting these complaints.

The government responds that the Eleventh Circuit pain standard was not cited because Plaintiff lived in Indiana at the time of the ALJ decision, but the ALJ's finding that Plaintiff's allegations of pain were not credible "leaves no doubt as to the appropriate result" citing applicable law for their contention that the failure to refer to the <u>Hand</u> standard does not require reversal. The government also argues that there are no objective test results that confirm the severity of Plaintiff's condition such as to produce the pain alleged. The ALJ also properly relied upon daily activities and lack of prescription pain medication as consistent with his finding that Plaintiff's allegations of pain were not credible.

The issue thus presented is whether the Commissioner's decision that Claimant is not disabled is supported by substantial evidence in the record and decided by proper legal standards.

### D.  STANDARD OF REVIEW

Title 42 U.S.C. § 405(g) sets forth the standard of review for this court. The Commissioner's decision must be affirmed if it is supported by substantial evidence and the correct legal standards have been applied. <u>Graham v. Apfel</u>, 129 F.3d 1420, 1422 (11th Cir. 1997). Findings of fact by the Commissioner which are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g). <u>Miles v. Chater</u>, 84 F.3d 1397, 1400 (11th Cir. 1996). "Substantial evidence" has been defined to mean "such relevant

**No. 1:02CV125-SPM/AK**

evidence as a reasonable mind might accept as adequate to support a conclusion." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citation omitted) (per curiam). It is more than a scintilla, but less than a preponderance. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. Wolfe v. Chater, 86 F.3d 1072, 1076 (11th Cir. 1996). It must determine only if substantial evidence supports the findings of the Commissioner. See Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987) (per curiam). Even if substantial evidence exists which is contrary to the Commissioner's findings, where there is substantially supportive evidence of the Commissioner's findings, the court cannot overturn them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Unlike the deferential review accorded to the Commissioner's findings of fact, his conclusions of law are not presumed valid. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). The Commissioner's failure to apply correct legal standards or to provide the reviewing court with an adequate basis for it to determine whether proper legal principles have been observed requires reversal. Id. (citations omitted).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that claimant

**No. 1:02CV125-SPM/AK**

is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairment?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent any other work?

A finding of disability or no disability at any step renders further evaluation unnecessary.  Plaintiff bears the burden of establishing a severe impairment that keeps him from performing his past work.  If Plaintiff establishes that his impairment keeps him from his past work, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given Plaintiff's impairments, Plaintiff can perform.  Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, Plaintiff must prove that he cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).  It is within the district court's discretion to affirm, modify, or reverse a Commissioner's final

**No. 1:02CV125-SPM/AK**

decision with or without remand. 42 U.S.C. § 405(g); <u>Myers v. Sullivan</u>, 916 F.2d 659, 676 (11th Cir. 1990).

E.     **SUMMARY OF CLAIMANT'S RELEVANT MEDICAL HISTORY**

Treatment notes of Dr. Gary Mikel, who had a MRI taken on September 19, 2000, found two levels of disc herniation at C5-C6 and C6/7.  (R. 180).  X-rays taken around this time show marked degenerative changes in the hips, narrowing of the L5-S1 disc space, question of foraminal encroachment in the L5-S1 area and the L4-5 area. (R. 186).

Treatment records of Dr. Phillipe show numerous refills for pain medication and complaints of pain since his first visit in fall 2000.  (R. 191-192).  Dr. Phillipe has recent MRI results (R. 193-195), which show degenerative disc disease with unconvertebral joint hypertrophy with multilevel spondylotic changes.  He prescribed Plaintiff Hydrocodone and Xanax.  (R. 192).

A consultative examination with Dr. Scott Kale on March 31, 2000, found an abnormal range of motion in the cervical and lumbar spine, and upon x-ray it was discovered that he had degenerative bone change most severe at L4-L5 with normal disc spaces, intact neural foramina and arches, and normal joint spaces.  (R. 141-145). Using Dr. Kale's findings and the x-ray report, Dr. Zimmerman assessed Plaintiff as capable of lifting 10 to 20 pounds, standing two hours a day, sitting six hours a day, with unlimited pushing and pulling, and occasional climbing, balancing, stooping, kneeling,

**No. 1:02CV125-SPM/AK**

crouching, and crawling. (R. 146-153). He also found Plaintiff's symptoms to be consistent with his history. (R. 151).

During a mental health assessment conducted on October 17, 2001, by Dr. William Hansen, Plaintiff admitted to abusing his pain medications, appeared drugged at one therapy session, and admitted to frequently running out of his medication because he used more than prescribed for pain to de-stress and relax. (R. 203-206). The examiner also found Plaintiff to have a significant personality disturbance with narcissistic traits, grandiose presentations, with wide mood swings, which were believed to be directly related to the amount of pain medication taken before the examinations. (R. 205). It was also suggested that bi-polar disorder be ruled out as a cause of the mood lability. (R. 205). He was diagnosed with major depressive disorder, single episode, opioid dependence, narcissistic personality disorder, disc disorders of the cervical and lumbar spine, and continued therapy was recommended.

A consultative mental health examination on November 7, 2001, suggested individual therapy for depression and a continued assessment for personality dysfunction. (R. 155-156).

Another psychological testing session on January 13, 2003, by Dr. William Hilger resulted in diagnoses of major depressive disorder, narcissistic personality disorder, and a degenerative disc condition in his back and hip. (R. 162). Dr. Hilger believed he would need continued therapy and treatment and would likely be limited to sedentary work, in a less stressful environment, that did not require walking, standing, or physical

**No. 1:02CV125-SPM/AK**

exertion. (R. 163). His assessment of work related activities was a moderate limitation in Plaintiff's ability to tolerate normal work activities, and to structure a daily routine, with moderate to severe limitations in his ability to tolerate contacts with others and to take supervision. (R. 164).

Daily activities are by self report very limited, such as no household chores and spending the day dealing with pain, which he describes as primarily located in his neck, back and all of his joints. (R. 123-125, 127-130, 137). Later reports (after remand) show continued limited activities. (R. 166-172).

F.       **SUMMARY OF THE ADMINISTRATIVE HEARING (August 28, 2003)**

Upon remand, the ALJ employed a vocational expert and two medical experts (an orthopedist and psychologist) to testify. (R. 233). Counsel for Plaintiff was also present. (R. 235). It was the ALJ's position that no new evidence was relevant because his date last insured (DLI) was two and a half years prior to the hearing. The ALJ stated that the new psychological evaluations were obtained to shed some light on the onset of his mental condition. (R. 236).

Plaintiff last worked in 1995, lived off his retirement several years, and had been living from place to place until he moved in with his father recently. (R. 239). He quit his last job because he was unable to sit or stand for long periods of time and could not make decisions. (R. 239). In his past job he was required to lift heavy (50 to 60 pounds) sample cases and give sales presentations after long hours of driving or flying. (R. 240). He has pain in his neck, hips, and elbows, which has been diagnosed most

**No. 1:02CV125-SPM/AK**

recently as DISH (an acronym for more than normal bone spurring, but less than ankylosing spondylitis). (R. 241, 251). He has also been told he needs a hip replacement in both hips. (R. 241). Plaintiff claims that his mental problems, which he describes as depression, began in 1993 or 1994. (R. 242). He had lumbar surgery in 1988, worked after that surgery, and does not have pain in that area as much as in his hips and neck. (R. 243). He takes six Vicodin a day, Celexa for depression, high blood pressure medications, Neurontin, and states that the pain medications "mask" the pain, but leave him in a stupor, unable to concentrate or function. (R. 244). Plaintiff claims that he can walk or stand about 10 to 15 minutes at a time, sit about 10 to 20 minutes, with no bending or stooping. (R. 245). He currently sees an orthopedic surgeon and a psychiatrist. (R. 246).

The vocational expert testified that Plaintiff's past work was as a sales manager, which as Plaintiff described it, particularly the heavy lifting, was performed at a medium level, but it is usually sedentary. (R. 248-249).

Medical expert, Dr. Richard Hutson, examined the x-ray evidence taken in September 2000, December 2001, March 2002, and April 2003, and testified that in his opinion none of Plaintiff's present problems would have met the listings of impairments on December 31, 2000. (R. 253). The doctor also opined that Plaintiff would be limited to sedentary work at that time with a sit/stand option. (R. 255-256).

Dr. Georgia Pitcher was also called to testify as to Plaintiff's mental status as of his date last insured. (R. 257). She reviewed reports from October 17, 2001,

**No. 1:02CV125-SPM/AK**

November 7, 2001, and January 13, 2003, (R. 265), and concluded that it was "likely" that he would have been depressed and have difficulty functioning since he became disabled in 1995, but she could not say. (R. 268). She also testified that Dr. Phillipe's assessment of Plaintiff as "depressed" was more in the nature of being sad or down, not depression with "a big 'D,'" as she described it, because as a family physician he would not be qualified to make a mental assessment. (R. 271).

The attorney for Plaintiff asked the vocational expert if a person of questionable mental ability due to depression and chronic pain could perform his past relevant work and she said, "No," but that these skills would be transferable to jobs requiring lesser mental capacity. (R. 273).

## G.  DISCUSSION

Pain and other subjective symptoms are treated by the regulations as symptoms of disability. Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, "unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms." Accord 20 C.F.R. § 416.929. In Hand v. Heckler, 761 F.2d 1545, 1549 (11th Cir. 1986), the Eleventh Circuit adopted the following pain standard:

> There must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

**No. 1:02CV125-SPM/AK**

The Eleventh Circuit continues to follow the Hand test.  Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991); Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991); Martin v. Railroad Retirement Bd., 935 F.2d 230, 233 (11th Cir. 1991).  "While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself."  Elam, 921 F.2d at 1216.  The court has held that "[p]ain alone can be disabling, even when its existence is unsupported by objective evidence."  Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992), citing Walker v. Bowen, 826 F.2d 996, 1003 (11th Cir. 1987).  Standing alone, however, a claimant's testimony of pain is not conclusive evidence of disability.  Macia v. Bowen, 829 F.2d 1009, 1011 (11th Cir. 1987).  If the Commissioner rejects a claimant's allegations of pain, he must articulate explicit and adequate reasons, and these reasons must be based on substantial evidence.  Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987).  The failure to articulate adequate reasons for discrediting pain testimony mandates that the testimony be accepted as true as a matter of law.  Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988).

As the Commissioner notes, the hearing in this case was held in Indiana, which is not within the Eleventh Circuit, and the fact that the ALJ did not cite the Hand standard is not necessarily grounds for reversal where his findings are based on the regulations.  Hennes v. Commissioner, 130 Fed. Appx. 343 (11th Cir. 2005).

**No. 1:02CV125-SPM/AK**

Pursuant to 20 CFR § 404.1529, the ALJ must determine whether the medical signs or laboratory findings show that a medically determinable impairment is present. Once an impairment is determined to be present, the ALJ must determine its intensity and persistence and how it affects a person's ability to work.  He considers all of the available evidence to make this determination, including a person's own statements, and such things as daily activities; location, duration, frequency and intensity of the pain reported; precipitating and aggravating factors; type, dosage and side effects of medication; treatment received for relief of pain; and other measures used to alleviate pain.  Inconsistencies in the record and between the person's statements and other evidence are also considered.

The ALJ here found that Plaintiff's testimony about severe pain concerned mostly his circumstances after December 31, 2000.  (R. 20).  Before this date, the ALJ noted that he sought medication in September 2000, but was only prescribed Vioxx by Dr. Mikel.  (R. 20).  A similar request later in the same month was also denied.  In October of 2000, Dr. Phillipe prescribed pain medication, which Plaintiff took more than as prescribed.  His daily activities reported during this relevant time period included watching his son play golf, driving, repairing things, talking to neighbors, thus, the ALJ found no more than a mild limitation in his daily activities and social functioning as result of his conditions.  (R. 21).  The ALJ assessed the medical objective evidence and found that x-rays taken prior to December 2000 showed osteophytes, degenerative disc

**No. 1:02CV125-SPM/AK**

disease with minimal cord deformity and stenosis, but that Plaintiff reported taking only Advil until September 2000.

Thus, the ALJ had confirmation through objective tests of a condition likely to produce pain, but medical experts reviewing the evidence were not of the opinion that the condition present at December 31, 2000, met the listing of impairments, and therefore, was not severe enough to support Plaintiff's allegations of disabling pain. Further, the ALJ articulated other reasons for discrediting Plaintiff's allegations of severity and limitation, such as his reported daily activities, social interactions, work activity, and lack of serious pain management, including prescription pain medication. Under the regulations, the ALJ engaged in the necessary analysis to adequately assess Plaintiff's allegations of pain to conclude that as of December 31, 2000, it was not sufficiently limiting as to reduce his residual functional capacity.

Accordingly, it is respectfully **RECOMMENDED**:

That the decision of the Commissioner denying benefits be **AFFIRMED**.

At Gainesville, Florida, this **17th** day of January, 2006.

                        s/ A. KORNBLUM
                        **ALLAN KORNBLUM**
                        **UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**No. 1:02CV125-SPM/AK**

A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.

**No. 1:02CV125-SPM/AK**